UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NINOTCHKA MANUS,

                Plaintiff,

-against-

MAX PINCIONE,

                Defendant.

23-CV-6149 (JGLC)

**OPINION AND ORDER**

---

JESSICA G. L. CLARKE, United States District Judge:

      This action concerns claims and counterclaims of breach of contract, fraud, conversion, and wrongful possession regarding a valuable platinum ring with a pear-shaped emerald (the "Ring") and a matching platinum necklace (the "Necklace"), both of which Plaintiff Ninotchka Manus ("Plaintiff" or "Ms. Manus") originally purchased from Defendant Max Pincione ("Defendant" or "Mr. Pincione") at Harry Winston, Fifth Avenue. Through circumstances the parties continue to dispute, the jewelry changed hands between them over the years. By the fall of 2023, the Court was advised by Plaintiff's former counsel that Plaintiff had possession of the Necklace, and by Defendant's counsel that Mr. Pincione had possession of the Ring. The Court, at the parties' request, and recognizing the significance of the jewelry to the parties' claims and potential relief, issued case management orders requiring the parties to maintain possession of the Necklace and Ring until the resolution of the case. ECF No. 11 at 4; ECF No. 22 at 4.

      However, it came to light in November 2024 that the parties had already disposed of the subject jewelry notwithstanding these express orders. In particular, Plaintiff, through new counsel, made clear that she sold the Necklace prior to the start of this lawsuit. Defendant Pincione, upon learning of Plaintiff's sale, sold the Ring in July of 2024. As a result, this Court ordered Plaintiff, Defendant, and Defendant's counsel to show cause why they should not be held in contempt and sanctioned for violating its express orders. ECF No. 94 (the "OTSC"). The

Court held a hearing regarding the OTSC on January 30, 2025 with the parties and their counsel. For the reasons set forth below, the Court imposes sanctions on Defendant due to his bad-faith sale of the Ring, but declines to impose sanctions on Defendant's counsel or Plaintiff.

Also before the Court are two discovery disputes: (1) Plaintiff's motion to quash subpoenas directed to Plaintiff's former attorney, Mr. Rick Stone (ECF No. 99); and (2) Defendant's request to extend the expert discovery deadline to retain an expert witness (ECF No. 89). The Court GRANTS Plaintiff's motion to quash and GRANTS Defendant's request to extend discovery to retain a handwriting expert. The Court will also separately enter the parties' proposed case management plan filed at ECF No. 115-1.

## BACKGROUND

Plaintiff commenced this action on October 18, 2022 in the Supreme Court of New York, County of New York alleging claims for fraudulent inducement, wrongful conversion, and a constructive trust for the Ring (which she alleges she purchased from Defendant at Harry Winston Fifth Avenue). ECF No. 1-1. Plaintiff alleges that she entrusted the Ring to Defendant to sell, but then Defendant converted it for himself. *Id.* at 2–3. Plaintiff sought a judgment (1) demanding that Defendant return the Ring to her possession; or (2) providing damages to cover the Ring's value. *Id.* at 5. On July 17, 2023, Defendant removed the action to this Court, ECF No. 1, and a month later, filed a counterclaim against Plaintiff alleging claims for fraud and breach of contract. ECF No. 7. Defendant alleges he gave various loans to Plaintiff, and as a result, Plaintiff entrusted the Necklace and Ring to him and authorized him to sell the jewelry to cover those costs. ECF No. 7 ¶¶ 2–6. Defendant also claims that Plaintiff "surreptitiously removed" the Necklace from his office, has refused to return it, and has refused to pay the loans. *Id.* ¶¶ 6–7.

Given the importance of the Ring (which Plaintiff sought to have returned to her through this action) and Necklace (which presumably could be used to cover the amount which Defendant alleges that Plaintiff owes him) to this litigation, this Court issued a case management order dated September 15, 2023, which instructed that "[n]either party will sell the jewelry in their [possession] until the resolution of this matter." ECF No. 11 at 4. In that same order, Plaintiff's counsel confirmed possession of the Necklace, and Defendant's counsel confirmed possession of the Ring. *Id.* On January 10, 2024, this Court issued an amended case management order which contained the same requirements and representations. ECF No. 22 at 4.

On June 11, 2024, after terminating her prior counsel, Plaintiff, through her new counsel Mr. Carter Reich, made Defendant aware that Plaintiff had previously sold the Necklace. ECF No. 68-7. On November 19, 2024, Plaintiff sought an *ex parte* temporary restraining order ("TRO") based on Defendant counsel's alleged refusal to confirm whether Defendant still maintained the Ring. The Court denied the *ex parte* application and instructed Plaintiff to file a TRO or preliminary injunction. ECF No. 66. Plaintiff moved for a preliminary injunction the same day. ECF No. 67. The Court held oral argument on the preliminary injunction motion on December 12, 2024. Thereafter, the Court ordered Defendant to provide an accounting of his sale of the Ring and ordered the parties to engage in limited discovery on the issue. ECF No. 80. The Court also stated at the hearing that any further disbursements by Defendant of the sale proceeds would be considered sanctionable. ECF No. 82 at 19:11-16.

Through the course of briefing Plaintiff's preliminary injunction motion, and based on representations from counsel at and immediately following the December 12, 2024 hearing on that motion, the Court began to have serious, well-founded concerns that the parties made misrepresentations to the Court or violated prior case management orders. For instance,

Defendant informed Plaintiff that the Ring had actually been sold on July 29, 2024 for $546,000, ECF No. 85-1, and he refused to agree to preserve the funds. ECF No. 81.

On January 2, 2025, the Court issued an order demanding that Defendant, Defendant's counsel, and Plaintiff show cause why the Court should not impose civil contempt sanctions pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent power. OTSC at 3. After receiving response briefs from the parties (ECF Nos. 95, 96, 98) and oppositions (ECF Nos. 105, 106), the Court further ordered the parties to provide direct testimony through sworn affidavits from witnesses they identified for the hearing (ECF No. 109). The parties timely provided affidavits from Ms. Manus and Mr. Pincione. ECF Nos. 111, 112.

Also during this time, Defendant served a subpoena on Mr. Rick Stone—Plaintiff's former counsel. ECF No. 99. The subpoena sought to compel the production of documents and a deposition regarding Plaintiff's sale of the Necklace. ECF Nos. 99-1, 102. On January 13, 2025, Plaintiff moved to quash the subpoena due to improper notice and because the subpoena would require the disclosure of privileged communications. ECF No. 99. On January 21, 2025, the Court stayed discovery pending resolution of the issues implicated by the OTSC and instructed that no depositions take place in the interim. ECF No. 109. Notwithstanding that order, on January 27, 2025 (three days before the OTSC hearing), Defendant, who stated an intention to call Mr. Stone to testify at the OTSC hearing, informed the Court it would provide a draft subpoena to compel Mr. Stone's testimony at the OTSC hearing. ECF No. 110. The Court instructed Defendant not to draft any such subpoena, because, among other things, it would fail to provide sufficient notice to Mr. Stone or opportunity for compliance. ECF No. 113.

The Court held a hearing on the OTSC on January 30, 2025 with the parties and their counsel in attendance. The parties were given an opportunity to cross examine the witnesses regarding the testimony in their affidavits and to provide argument to the Court regarding their

4

positions on sanctions. At the hearing, counsel cross examined Plaintiff and Defendant. On several occasions, despite this Court's instructions and admonitions, both of counsel's cross examinations of the witnesses went beyond the subject of the hearing, both by addressing the underlying merits of the parties' claims and by straying beyond the witnesses' direct testimony by affidavit. Each party's examination lasted about an hour. Defendant's examination concluded by reading an email apparently sent from Mr. Stone to Defendant's counsel. The Court permitted Defendant to file the email as an exhibit after the hearing. ECF No. 114.

The Court reserved ruling on the OTSC. The parties thereafter filed a joint letter on February 6, 2025, providing a revised case management plan seeking to extend fact and expert discovery. ECF No. 115.

## DISCUSSION

The OTSC demanded the parties show cause why they should not be held in contempt, and why sanctions should not issue pursuant to Federal Rule of Civil Procedure 11(b)(2) and 11(c), 28 U.S.C. § 1927, and the Court's "inherent power." The Court has carefully considered the materials submitted by the parties and the testimony it received at the January 30, 2025 hearing. As set forth below, the Court only imposes sanctions on Defendant due to his bad faith sale of the Ring. The Court then grants Plaintiff's motion to quash Defendant's subpoenas because the testimony he sought is now moot, and the Court grants Defendant's request to extend expert discovery.

**I.    Sanctions are Warranted Against Defendant Pincione**

"Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (internal

5

quotation marks and citations omitted). "The power to punish parties for contempt is inherent in all courts. . . ." *Weston Cap. Advisors, Inc. v. PT Bank Mutiara, Tbk*, 738 F. App'x 19, 21 (2d Cir. 2018) (summary order).

"A court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016). It is basic law that a civil contempt sanction must only be compensatory or coercive and may not be punitive. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947); *accord Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 144 (2d Cir. 2014).

Moreover, where, as here, sanctions would require a resort to the Court's inherent power, parties must generally be afforded due process. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 and n.14 (1980). And specifically as to Rule 11, a court must first issue an order to show cause before imposing *sua sponte* sanctions. Fed. R. Civ. P. 11(c)(3). In addition, to invoke the inherent power to impose sanctions, the district court must make an explicit finding of bad faith. *Sadowski v. HNGN, Inc.*, No. 22-CV-8442 (JLR), 2024 WL 916263, at *2 (S.D.N.Y. Mar. 4, 2024) (citing *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 143 (2d Cir. 2023)). The finding of bad faith must be made by clear and convincing evidence. *Wolters Kluwer Financial Services, Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) ("[I]nherent-power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes."); *see also* 1 Sanc. Fed. Law of Lit. Abuse § 26 (2025) (collecting cases).

The Court considers these factors below and concludes due process has been afforded to the parties, and that sanctions shall be imposed on Defendant for his bad faith conduct in selling the Ring and disposing of the sale proceeds.

### A. The Parties' Due Process Rights Have Been Protected

The Court has afforded adequate due process to the parties. Due process generally requires fair notice and an opportunity to be heard. *Sadowski*, 2024 WL 916263, at *2. The OTSC provided the parties an opportunity to explain why sanctions should not issue, and also gave each side an opportunity to respond to the opposing side's brief in an opposition. OTSC at 3. The Court similarly provided an opportunity for the parties to call witnesses by providing direct testimony by affidavit, and then cross-examine opposing witnesses at the hearing. ECF No. 109. And as previously stated, each side cross examined the opposing witness for almost an hour, and counsel pursued lines of questioning far beyond the subject of the hearing. Finally, the Court gave the parties' counsel an opportunity to argue whether sanctions would be appropriate. The Court also permitted Defendant's counsel to submit an additional exhibit email from discovery he referenced at the hearing. *See* ECF No. 114.

The parties were thus afforded substantial due process for the imposition of sanctions to be appropriate.

### B. The Court Will Not Impose Sanctions on Plaintiff or Defendant's Counsel

Having carefully considered the record, the Court declines to impose sanctions on Plaintiff or Defendant's counsel.

With respect to Defendant's counsel, the OTSC instructed he show cause why he should not be sanctioned for failing to timely produce documents to the Court. Counsel explained the delay resulted from being out of the office and waiting to seek clarity from the Court on whether

to submit the documents by email *in camera* or to file them on the docket. ECF Nos. 88, 90. The Court accepts that counsel's failure to timely file documents in compliance with the Court's order was inadvertent. However, the Court admonishes Defendant's counsel to comply with Court ordered deadlines in the future.

With respect to Plaintiff, the OTSC demanded she show cause why she should not be sanctioned for apparently making a misrepresentation to the Court through her counsel — namely, that she still had the Necklace. OTSC at 2. The OTSC also demanded that Plaintiff show cause with respect to a representation she allegedly made during a confidential mediation session: namely, a statement to Defendant and his counsel that she still possessed the Necklace. *Id.* at 2-3.

Ms. Manus testified she never made any representation about the Necklace to Defendant or his counsel because she never saw them during the Zoom session. ECF No. 116 ("OTSC Tr.") at 20:3–11. Ms. Manus testified throughout the OTSC hearing that she believed the Necklace had nothing to do with the instant litigation. She maintained that the Necklace was not part of her claims and that she therefore never talked to her lawyer about the Necklace. OTSC Tr. at 15:12-17; 18:5-11. Plaintiff testified she never told her former lawyer, Mr. Stone, she had possession of the Necklace, and that Mr. Stone never asked her if she possessed it. OTSC Tr. at 18:12-24. Although her former counsel previously represented otherwise to the Court, there is at least some reason to believe that Ms. Manus was truthful in her testimony.

For instance, it appears clear from the record that Ms. Manus had issues communicating with Mr. Stone. Mr. Stone often failed to communicate with her in a timely fashion or respond to her inquiries and made inaccurate assertions in the original complaint. OTSC Tr. at 26:1–5, 34:22–35:7; ECF No. 96 at 1. Indeed, Mr. Stone sought to withdraw from representing Ms. Manus because of a breakdown in the attorney-client relationship. ECF Nos. 34, 40. Plaintiff also

8

appeared to immediately inform her new and current lawyer, Mr. Reich, she had sold the Necklace. OTSC Tr. 43:9-44:3. Mr. Reich, in turn, promptly notified Defendant and counsel of that fact. ECF No. 68-7. This conduct appears inconsistent with a person who was allegedly hiding this fact from her prior lawyer.

The Court therefore does not find clear and convincing evidence that Plaintiff herself made misrepresentations to this Court through her prior counsel. The Court also notes that while Mr. Stone did not provide any testimony in this matter, at most, Mr. Stone's testimony would have created a factual dispute, which similarly would not allow the Court to conclude by clear and convincing evidence Plaintiff made a misrepresentation or acted in bad faith.

### C. The Court Will Impose Contempt Sanctions on Defendant

The Court finds it appropriate and necessary to impose contempt sanctions on Defendant Pincione for his willful sale of the Ring. The OTSC demanded that Mr. Pincione show cause why he not be sanctioned for selling the Ring, and for apparently continuing to disburse proceeds of the sale despite the Court's instruction to the contrary at the December 12, 2024 hearing. OTSC at 2–3. The record demonstrates that Mr. Pincione ignored both directives of this Court in bad faith.

First, the elements for civil contempt are plainly satisfied. The case management orders clearly and unambiguously instructed that "[n]either party will sell the jewelry in their [possession] until the resolution of this matter." ECF No. 11 at 4. Mr. Pincione's noncompliance is "clear and convincing" on the available record, given he admitted he sold the Ring while the case management orders were in effect. *CBS*, 814 F.3d at 98; OTSC Tr. at 62:10-22. And Mr. Pincione has not "diligently attempted to comply in a reasonable manner" with the case management orders. *CBS*, 814 F.3d at 98. Indeed, rather than seek relief from the Court to amend

them in light of Ms. Manus's conduct, Mr. Pincione testified he independently came to the incorrect conclusion the orders were no longer valid. OTSC Tr. at 60:9-21.

The same analysis also supports a finding of contempt regarding the Court's warning at the December 12, 2024 hearing that Defendant should not further disburse proceeds from the sale of the Ring. The Court unambiguously stated:

> A word of caution -- and I want to make sure that this is relayed to your clients -- that I will strongly consider, if, in the meantime, if any party dissipates assets from the proceeds from the sale of any jewelry, whether that was done in contempt of a court order, and if I find that it was, I will sanction the respective parties.

ECF No. 82 at 19:11-16. Mr. Pincione furnished "clear and convincing" evidence that he disregarded this directive. *CBS*, 814 F.3d at 98. Pincione produced bank statements in response to this Court's order requiring him to provide an accounting of the disbursements of the sale proceeds. ECF No. 95-1. For instance, Defendant disbursed $3,600 on December 13, 2024—the day right after the Court's directive. ECF No. 95-1 at p. 45 of 48. The Court is also troubled by the fact that a large sum ($16,594.53) was transferred the *same day* as the directive on December 12. *Id.* at p. 42 of 48.

Second, the Court can make a finding of bad faith on the available record. "Bad faith can be inferred when the actions taken are 'so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.'" *S.E.C. v. Rajaratnam*, No. 13-CV-1894 (JGK), 2018 WL 562940, at *1 (S.D.N.Y. Jan. 24, 2018) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 338 (2d Cir. 1999)). Here, Mr. Pincione engaged in self-help to secure funds for his debts and personal affairs, testifying he thought he would "never see any money from [Ms. Manus] even if [he] [got] a judgment." OTSC Tr. 73:15-16. He did so despite the fact that, around the same time, Plaintiff was requesting that the Ring be turned over to a third party for safekeeping pending the outcome of the litigation. OTSC Tr. at 61:12-22. And

10

while Mr. Pincione claimed he needed the funds to pay off bills and debts, OTSC Tr. at 66:24-67:2, his bank statements make clear he spent thousands of dollars on non-essential purchases. For instance, Defendant spent $1,632.04 at the Apple Store for a "new computer." OTSC Tr. 70:18-20; ECF No. 95-1 at p. 17 of 48. He also spent $1,542.87 at the DoubleTree by Hilton. ECF No. 95-1 at 26 of 48. There has also been no adjudication in this case that he is entitled to money from Plaintiff.

The most troubling fact is that Mr. Pincione knowingly, and irreparably, harmed Plaintiff by preventing her from being able to get meaningfully complete relief should she prevail in this litigation. Whereas Defendant's counterclaim only seeks money—which he could only collect on after getting a judgment—Plaintiff brought this action specifically seeking the return of the Ring, something that can no longer happen because of Mr. Pincione's unilateral conduct. In short, Mr. Pincione side-stepped this Court's express orders and the pending litigation to help himself to something he only should have been able to obtain after succeeding on the merits.

The Court accordingly finds it must impose sanctions on Defendant. Courts are permitted to issue compensatory or coercive sanctions. "The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs.*, 369 F.3d 645, 657 (2d Cir. 2004). For any compensatory sanction, "some proof of loss must be present to justify its compensatory aspects." *Id.* at 658. And to the extent a contempt sanction is coercive, the court has "broad discretion to design a remedy that will bring about compliance." *Id.* (citing *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982)).

As a contempt sanction, the Court orders Defendant to pay Plaintiff's counsel's reasonable fees and costs in both litigating the OTSC and litigating the *ex parte* TRO application and the motion for preliminary injunction, which Plaintiff was prejudiced in being able to

properly and timely bring because of Defendant's conduct. In addition, Defendant has admitted that there is $9,643 remaining (ECF No. 111 ¶ 17) from the sale. Defendant is directed not to disburse these funds for the remainder of this litigation. The Court gives this instruction because, should Plaintiff prevail in this case, she would be entitled to at least the entire sum of the sale of the Ring ($546,000) and any additional amount that is commensurate with its actual value. But the Court cannot, at this juncture, articulate what that amount would be, particularly given that it is ultimately a question for the finder of fact to determine.

  As a discovery sanction, the Court will permit Plaintiff, pursuant to Rule 37, to seek an adverse inference instruction based on Defendant's secretion of the Ring when the parties submit motions in limine and other pre-trial motions. "An adverse inference instruction based on the failure to produce evidence in time for use at trial requires a showing that (1) the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Kortright Capital Partners LP v. Investcorp Investment Advisers Ltd.*, 330 F.R.D. 134, 137 (S.D.N.Y. 2019) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).

  The first and third elements are plainly satisfied here: the case management orders instructed Defendant to maintain possession of the Ring, and the missing Ring directly relates to Plaintiff's claims and damages. Regarding the state of mind requirement, *Residential Corp.* makes clear this can be satisfied upon a showing of bare ordinary negligence. *Residential Funding*, 306 F.3d at 108. The evidence is stronger here: the Court finds, as Defendant admitted, he sold the Ring not negligently, but *knowingly*. OTSC Tr. at 62:10-22. As such, the Court will determine the appropriate instruction in advance of trial after briefing from the parties.

Finally, the Court instructs Defendant provide, to Plaintiff's counsel, an unredacted copy of his bank statements the parties discussed at the OTSC hearing. Defendant testified "[a]nything that [he] redacted is small stuff." OTSC Tr. at 71:13–16. He further testified he "gave" Plaintiff these unredacted statements, *id.,* and invited scrutiny of the unredacted statements. *Id.* at 67:6–8. However, Plaintiff's counsel stated he would "make a request for those later," *id.*, suggesting Defendant has not yet produced them. The Court reserves its ability to impose further sanctions on Defendant should there be any inconsistencies between the unredacted statements and Defendant's testimony (or any of this Court's prior orders).

## II. Parties' Remaining Discovery Disputes

The Court lastly addresses two outstanding discovery disputes between the parties. First, Plaintiff's motion to quash subpoenas (ECF No. 99) served by Defendant on Plaintiff's former counsel, Mr. Stone, is GRANTED. The subpoena only sought information from Mr. Stone regarding the conduct and representations which were ultimately the subject of the OTSC. Having heard from the other relevant parties and addressed the OTSC with this Order, the information sought is moot.

Second, Defendant's request to extend expert discovery to retain an expert (ECF No. 89) is GRANTED, as the parties have agreed to extend both the fact and expert discovery deadline as reflected in the latest proposed case management order they submitted to the Court. ECF No. 115-1. However, the Court admonishes the parties that further extensions are unlikely to be granted absent extraordinary circumstances, and the Court makes clear any dilatory conduct by Defendant in retaining an expert will not be excused.

## CONCLUSION

Accordingly, it is HEREBY ORDERED that Defendant is in contempt for failing to comply with express orders of this Court and is sanctioned as set forth above. Plaintiff's counsel

shall submit a fee application by **March 10, 2025**. Defendant may submit any challenge by **March 21, 2025,** and Plaintiff may file a reply by **March 28, 2025**. The Court also terminates, as moot, Plaintiff's previous motion for a preliminary injunction (ECF No. 67) given the Ring has been sold, and the resulting proceeds largely disposed of, and given the Court has ordered the remaining $9,643 from the Ring sale be frozen.

Defendant is FURTHER ORDERED to furnish to Plaintiff's counsel, by **February 26, 2025**, unredacted copies of Defendant's bank statements which the parties discussed at the OTSC hearing. Defendant shall confirm in writing to this Court, by the same date, that the unredacted statements have been provided to Plaintiff's counsel.

The Clerk of Court is respectfully directed to terminate ECF Nos. 67 and 99.

Dated: February 20, 2025
      New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge