UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NINOTCHKA MANUS,

Plaintiff,

-against-

MAX PINCIONE, et al.,

Defendants.

23-CV-6149 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

This action centers on a pear-shaped emerald, diamond, and platinum ring (the "Ring")— once valued at nearly two million dollars and purchased for Plaintiff Ninotchka Manus ("Plaintiff" or "Ms. Manus")—and its matching necklace (the "Necklace"). Through circumstances the parties dispute, this jewelry has changed hands among Ms. Manus, Defendant Max Pincione ("Defendant Pincione" or "Mr. Pincione"), Defendant Norah Al Saud a/k/a Norah Bind Saad ("Defendant Al Saud" or "Ms. Al Saud"), and other defendants in this action in recent years. Despite this Court's 2023 Order for Ms. Manus to retain the Necklace and Mr. Pincione to retain the Ring during the pendency of the case, it came to light in November 2024 that neither party possessed their respective item and that Mr. Pincione had sold the Ring earlier that year.

Consequently, Plaintiff amended her complaint in pursuit of the Ring. The newly named defendants are two corporations that Mr. Pincione owns, Cimabue Limited and Consulting Concepts International; Mr. Pincione's "girlfriend and financier," Ms. Al Saud; the most recent known buyer of the Ring, Belperron Jewelers; and any yet-unknown current possessor of the Ring. ECF No. 142, First Amended Complaint ("FAC") ¶¶ 7–12, 47. Plaintiff also added the Ring as a defendant *in rem*.

Before the Court now is Defendant Norah Al Saud's Motion to Dismiss the claim against her for Aiding and Abetting Fraud and Bad-Faith Conversion and Plaintiff's Motion to Amend the First Amended Complaint. Because Plaintiff fails to allege at least one required element of this claim in both the First Amended Complaint and Plaintiff's proposed, additional amendments, Defendant Al Saud's Motion to Dismiss is GRANTED and Plaintiff's Motion to Amend is DENIED.

## BACKGROUND

The history of the dispute underlying this case is complex and only reviewed here to the extent necessary to evaluate Plaintiff's claims against Ms. Al Saud. Unless otherwise noted, the following facts are taken from the FAC and presumed to be true for purposes of the instant motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Plaintiff filed her original complaint against Defendant Pincione in the Supreme Court of New York, New York County, on October 18, 2022. *See* ECF 1-1 at 2. On July 17, 2023, Mr. Pincione removed this action. ECF No. 1. On August 23, 2023, Mr. Pincione and an additional counterclaimant raised counterclaims against Ms. Manus. ECF No. 7. The Court subsequently dismissed one of the counterclaims. ECF No. 80. Disputes about both parties violating court orders and making material misrepresentations to the Court culminated in an Opinion and Order from the Court imposing sanctions on Mr. Pincione for his bad-faith sale of the Ring. *See* ECF No. 118. On April 16, 2025, Plaintiff filed the First Amended Complaint adding several defendants, including Ms. Al Saud, and adding the Ring as a defendant *in rem*. ¶ 3.

Before the Court now is Count Six for aiding and abetting fraud and conversion as to Defendant Al Saud. ¶¶ 119–123. The Court first discusses the facts underlying the fraud and bad-

faith conversion allegations against Mr. Pincione before discussing Ms. Al Saud's alleged role in the events.

## I.    The Underlying Dispute Between Ms. Manus and Mr. Pincione

Ms. Manus and Mr. Pincione's relationship began at least as far back as 2000, when he appraised the Ring as an employee of Harry Winston, Fifth Avenue. ¶¶ 15–16. Much later, during a period of upheaval in Ms. Manus' life, Ms. Manus entrusted Mr. Pincione with a bag of documents, which she never got back. ¶ 18. Around the same time, Mr. Pincione also offered to safeguard her jewelry. ¶ 19. It appears Ms. Manus took him up on that offer and left Mr. Pincione with possession of the Ring and other items until, a couple years later in 2019, Ms. Manus asked Mr. Pincione to sell both the Ring and the Necklace. ¶ 22. Mr. Pincione subsequently told her that he was in negotiations with a potential buyer—a claim Ms. Manus now asserts was false. ¶¶ 22–23. By the time 2019 neared an end, no profits had materialized, and Ms. Manus needed money. ¶ 24.

Here, Ms. Manus alleges, the fraud became evident. Mr. Pincione helped send "small wires" to her to "lend credibility to . . . a claim that he is owed a much greater amount of money and that he was authorized to sell Plaintiff's jewelry to pay himself back." ¶ 25. Ms. Manus first realized something was wrong in February 2020 when she received a letter from Mr. Pincione stating that his company, Consulting Concepts International, was a "50% partner / owner since January 2001 of Jewelry items." ¶ 26. She was "shocked." *Id.* One month later, as the COVID-19 pandemic descended on New York City, Ms. Manus flew to New York to confront Mr. Pincione. ¶ 27. A heated argument ensued, wherein Ms. Manus left with the Necklace, and Mr. Pincione kept the Ring against Ms. Manus' protestations. ¶¶ 28, 30. In the following months, Ms. Manus

contacted Sotheby's to inquire about the Ring, reported it stolen to the New York Police Department, and registered it with the Art Loss Register. ¶¶ 31–34.

A little more than one year later, Ms. Manus filed the instant lawsuit in state court seeking the return of the Ring from Mr. Pincione. ¶¶ 35–36. During the litigation, Defendants Pincione and Cimabue Ltd. produced an agreement dated August 12, 2019, in which Ms. Manus acknowledged receiving $574,000 from Mr. Pincione and authorized him to sell "the set" to repay her debt. ¶¶ 38, 41. Ms. Manus denies the authenticity of the agreement, claiming that the signature is "cut and pasted" and the document was forged after the fact. ¶¶ 39, 42–43. Mr. Pincione's role in the dispute over the Ring culminated in its sale to Defendant Belperron Jewelers for $546,000 in July 2024. ¶ 47.

## II.    Ms. Al Saud's Role

Plaintiff alleges that Ms. Al Saud tried to get Plaintiff to sign a 50% interest in her "Jewelry items" to Consulting Concepts, a company controlled by Pincione in 2020, for the purpose of selling Plaintiff's jewelry at Sotheby's in Geneva. ¶¶ 10, 32; *see also* ¶ 26. Despite her efforts, Ms. Al Saud could not sell Plaintiff's jewelry at that time because Sotheby's eventually recognized the jewelry as belonging to Ms. Manus and canceled their sales contract with Consulting Concepts. ¶¶ 31–32. Plaintiff further alleges that Ms. Al Saud knew about Pincione and Cimabue Limited's fraudulent scheme to gain profits from the sale of Plaintiff's jewelry and "continue[s] to knowingly and intentionally provide . . . substantial assistance in carrying out and/or concealing this fraudulent and other wrongful conduct set forth herein." ¶ 121. Last, Plaintiff alleges that her damages from Pincione's and Cimabue's fraud and conversion is the direct and proximate result of Defendant Al Saud's aiding and abetting. ¶ 122.

4

## LEGAL STANDARD

Defendant Al Saud moves to dismiss the FAC against her under Rules 12(b)(6) and 9(b). Plaintiff cross-moved for leave to file a Second Amended Complaint. The Court sets out the applicable standards under each motion.

### I.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id.* at 679.

### II.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 9(b)

With respect to claims alleging fraud, Rule 9(b) imposes a heightened pleading standard. Such claims must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff is required to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made,

and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal citation omitted). A plaintiff must also "allege facts that give rise to a strong inference of fraudulent intent." *Id.* (citing *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir.1995)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 290–91 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). Nonetheless, a "more general standard" applies to scienter because "a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) (quoting *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir.1987)) (internal quotation marks omitted).

Failure to satisfy the Rule 9(b) standard is grounds for dismissal. *See, e.g.*, *Lerner*, 459 F.3d at 292–93 (finding that the complaint failed to plead facts with the requisite particularity to allege fraud and affirming the district court's dismissal of the claims for aiding and abetting fraud).

## III.    Leave to Amend

Finally, leave to amend is "within the sound discretion of the trial court" and leave to amend shall be freely granted "when justice so requires." *Bay Harbour Mgmt., LLC v. Carothers*, 474 F. Supp. 2d 501, 502 (S.D.N.Y. 2007) (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)); Fed. R. Civ. P. 15(a)(2). "Amendments are generally favored because they tend to facilitate a proper decision on the merits." *Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*, No. 20-CV-10699 (MKV), 2021 WL 2075586, at *1 (S.D.N.Y. May 24, 2021) (internal citation and quotation marks omitted). "District Courts typically grant plaintiffs at least one

opportunity to plead fraud with greater specificity when they dismiss under Rule 9(b)." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007); *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) ("Complaints dismissed under Rule 9(b) are almost always dismissed with leave to amend.") (internal citation and quotation marks omitted); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 397 (S.D.N.Y. 2003) (noting that the policy of permitting a plaintiff to replead his case is "especially appropriate in the context of claims dismissed under Rule 9(b) because the law favors resolving disputes on their merits.").

The Supreme Court has instructed, however, that leave should be denied upon a showing of "futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (internal citation omitted). District courts have denied leave to amend where the pleadings are "plainly insufficient to satisfy the requirements of Rule 9(b)." *In re IBM Arb. Agreement Litig.*, No. 21-CV-6296 (JMF), 2022 WL 2752618, at *11 (S.D.N.Y. July 14, 2022), *aff'd*, 76 F.4th 74 (2d Cir. 2023); *see also, e.g.*, *Walker v. LWT Enters., Inc.*, No. 24-CV-6478 (JGLC), 2025 WL 2773304, at *9 (S.D.N.Y. Sept. 29, 2025).

## DISCUSSION

This section proceeds in two parts. First, the Court determines that Plaintiff has not met either the Rule 12(b)(6) or the Rule 9(b) pleading standard to survive a motion to dismiss on her aiding and abetting claim against Ms. Al Saud. And second, the Court denies Plaintiff leave to

file a second amended complaint—finding that any such attempt would be futile as demonstrated by her Proposed Second Amended Complaint ("PSAC").

**I.      Plaintiff's First Amended Complaint Fails to State a Claim for Aiding and Abetting Against Defendant Al Saud**

To make out a claim for aiding and abetting fraud under New York law, "the plaintiffs must show (1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) (quoting *Lerner*, 459 F.3d at 292) (internal quotation marks omitted) (alteration in original). The same standard is applicable for aiding and abetting conversion. *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012); *see also Kirschner v. Bennett*, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009) (describing the elements of aiding and abetting conversion and fraud, respectively, as "substantially similar").

Defendant Al Saud argues that Plaintiff fails to allege that Ms. Al Saud had actual knowledge of any crime or provided substantial assistance in the commission of the fraud. ECF No. 160-3 ("MTD") at 1.

The Court agrees with Defendant Al Saud in both respects. First, the FAC fails to adequately demonstrate that Ms. Al Saud possessed actual knowledge of any underlying fraud or conversion. "[A]ctual knowledge is required to impose liability to an aider and abettor under New York law." *Krys v. Pigott*, 749 F.3d 117, 127 (quoting *Lerner*, 459 F.3d at 292) (alteration in original); see also *Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 627 (2d Cir. 2020). Only one action involving Ms. Al Saud is pled with specificity: that she presented Plaintiff's jewelry to the chairman of Sotheby's. FAC ¶ 31. "Clearly," the FAC claims, Ms. Al Saud's attempts to secure a sale means she "had attempted to get Plaintiff to sign over 50% interest in her jewelry to Consulting Concepts International to enable [Defendants] to sell the jewelry at Sotheby's." *Id.* ¶

8

32. But the FAC specifies that *Mr. Pincione* was the one who sent the document from Consulting Concepts International claiming 50% ownership of the jewelry, and Plaintiff does not allege any particular involvement by Ms. Al Saud. *Id.* ¶ 26. The FAC thus fails to allege any fact suggesting that Ms. Al Saud knew the provenance or ownership of the Ring at the time she presented it to Sotheby's, relying only on her status as Mr. Pincione's "girlfriend and financier." *Id.* ¶ 10.

Next, the FAC fails to show that Ms. Al Saud substantially assisted with Mr. Pincione's fraud or bad-faith conversion. Embedded in the substantial assistance element is a requirement that "a defendant's participation [was] the proximate cause of plaintiff's injury." *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 487 (S.D.N.Y. 2018) (quoting *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 167 (S.D.N.Y. 2003)) (alteration in original). Here, as a causal matter, the limited actions alleged in the FAC could not have been a "direct or reasonably foreseeable result of the defendant's conduct." *Id.* at 488 (quoting *Filler v. Hanvit Bank*, Nos. 1-CV-9510 (MGC), 2-CV-8251 (MGC), 2003 WL 22110773, at *2 (S.D.N.Y. Sept. 12, 2003)). The injury at issue as alleged in the FAC is Plaintiff's loss of the Ring after it was sold by Mr. Pincione. The FAC acknowledges that Sotheby's canceled the sale of Ms. Manus' jewelry, *see* FAC ¶ 32, and thus any actions taken by Ms. Al Saud to effectuate that sale cannot be what deprived Ms. Manus of the Ring. There are no allegations that she was involved in its eventual sale on July 29, 2024. *See id.* ¶ 47.

Aside from the facts referenced above, Ms. Al Saud only appears in the FAC alongside conclusory statements alleging that she has "knowledge of this fraud and continue[s] to knowingly and intentionally provide [co-defendants] with substantial assistance in carrying out and/or concealing this fraudulent and other wrongful conduct." *See id.* ¶ 121. Because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

9

statements, do not suffice," *Iqbal*, 556 U.S. at 678, Defendant Al Saud's Motion to Dismiss is granted.

## II.    Plaintiff's Proposed Second Amended Complaint Would Be Futile

In her Proposed Second Amended Complaint, Plaintiff alleges additional facts regarding Ms. Al Saud that cannot withstand a future motion to dismiss. Plaintiff maintains that Ms. Al Saud presented the jewelry to Sotheby's and thus was involved in the scheme to get Ms. Manus to sign away a 50% share of the jewelry. *See supra* Discussion Part I. She further contends that Ms. Al Saud witnessed the entire March 11, 2020 interaction in Mr. Pincione's office when Plaintiff demanded her jewelry back and received all of it except for the Ring, which Mr. Pincione "forcibly pulled" out of her hand. ECF No. 164-5 ("PSAC") ¶¶ 28–29, 85. Plaintiff also alleges that Defendant Al Saud provided an October 26, 2023 "sham affidavit" saying she witnessed Plaintiff sign an August 12, 2019 agreement consenting to her jewelry be used as security to repay a $574,000 debt to Pincione. PSAC ¶¶ 88, 90; ECF No. 165 ("Opp. to MTD") at 1. Plaintiff contends that the affidavit is false because she never signed such an agreement and has reason to believe her signature was "cut and pasted" from personal documents that Pincione had in his possession. PSAC ¶ 89. Plaintiff moreover alleges that Defendant Al Saud received a portion of the ill-gotten proceeds from the eventual July 2024 sale of the Ring. PSAC ¶ 96. Finally, Plaintiff alleges that Al Saud has "actual knowledge of the fraud" and is "intimately familiar with Pincione's business dealings." PSAC ¶¶ 11, 123.

Unlike the FAC, the PSAC successfully gives rise to an inference that Defendant Al Saud had actual knowledge of Mr. Pincione's scheme. *See Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 627 (2d Cir. 2020) (citing *Bigio*, 675 F.3d at 172; *Lerner*, 459 F.3d at 292). In particular, a "sham affidavit" by Ms. Al Saud attesting that she had witnessed an agreement that

10

Plaintiff alleges never took place provides strong support for her state of mind. If true, it suggests Ms. Al Saud made an affirmative misrepresentation in 2023 to provide cover to Mr. Pincione's claim to the jewelry. At the time of her affidavit, Ms. Al Saud knew that ownership of the jewelry was disputed because she witnessed the prior heated argument between Ms. Manus and Mr. Pincione. There is even some support for the notion that Ms. Al Saud may have known about the alleged fraud as far back as 2019 or 2020, when she presented the Ring to the chairman of Sotheby's. PSAC ¶ 32. At that time, she indicated that Defendant Consulting Concepts International Inc. owned the Ring, even though her more recent affidavit suggests she witnessed an agreement giving ownership to Defendant Cimabue Ltd. only a few months prior. *See* PSAC ¶¶ 32, 88, 90; Opp. to MTD at 5. However, the Court finds actual knowledge during that time period less conclusive. Plaintiff's briefing alleges that Ms. Al Saud "was told directly" that the Ring she presented to Sotheby's "did not belong to her." Opp. to MTD at 5. But the PSAC fails to allege that Ms. Al Saud executed the contract with or received notice of the canceled sale at Sotheby's, relying instead on one statement that she "presented" the Ring to the Sotheby's chairman. PSAC ¶ 32–33. Irrespective, knowledge in 2023 of the Ring's ownership before its sale to Belperron Jewelers would still suffice to the extent the aiding and abetting claims pertain to the eventual sale.

However, actual knowledge of fraud or bad-faith conversion does not suffice to establish aiding and abetting liability where substantial assistance is insufficiently alleged. A "plaintiff must allege that the aiding and abetting defendant proximately caused the harm on which the *primary liability* is predicated." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 201 (S.D.N.Y. 2006) (citing *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 249 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998)) (emphasis added). "'[A]ider

and abettor liability requires the injury to be a direct or reasonably foreseeable result of the conduct." *Id.* at 201–02 (citing *Kolbeck*, 939 F. Supp. at 249). "Central to the notion of proximate cause is the idea that a person is not liable to all those who may have been injured by his conduct, but only to those with respect to whom his acts were a substantial factor in the sequence of responsible causation . . . ." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003), *as amended* (Apr. 16, 2003) (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994)) (internal quotation marks omitted).

Here, Ms. Al Saud's actions as alleged in the PSAC cannot be the proximate cause of Mr. Pincione's initial possession of the Ring or its eventual sale to Belperron Jewelers. Ms. Al Saud's alleged participation in sending Ms. Manus a contract for 50% of the Ring remains conclusory— without any specific act or omission by Ms. Al Saud identified—and without impact, because Ms. Manus does not acknowledge ever signing the contract or assert that it was seen by Belperron. *See* PSAC ¶¶ 27, 33. The sales contract at Sotheby's that Ms. Al Saud set into motion was canceled. *Id.* Ms. Al Saud's 2023 "sham affidavit" did not facilitate Mr. Pincione's continued possession or eventual sale of the Ring; indeed, Plaintiff never alleges that the affidavit has been seen outside of the instant litigation. Nor can receiving ill-gotten funds after the execution of a fraudulent scheme or bad-faith conversion be the proximate cause of Ms. Manus' injury— because at that point, the injury had already occurred. To the extent that Plaintiff is relying on a "ratification" theory of aiding and abetting liability, the relevant inquiry still turns on proximate cause. *See Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 136 (2d Cir. 2008). Plaintiff has failed to sufficiently allege that here. Ultimately, even if Plaintiff believes that Ms. Al Saud contributed to a fraudulent scheme, she does not allege at this juncture that Ms. Al Saud did so with any success.

Neither, too, can past dealings or the relationship between Mr. Pincione and Ms. Al Saud demonstrate that she provided substantial assistance here. Plaintiff alleges that Al Saud has "actual knowledge of the fraud" and is "intimately familiar with Pincione's business dealings." PSAC ¶¶ 11, 123. In support of their Opposition to the Motion to Dismiss, Plaintiff claims that Ms. Al Saud's status as Mr. Pincione's "girlfriend and financier" gives her "direct knowledge of his business dealings as well as the entities he controls." Opp. to MTD at 5. While these allegations may support knowledge, they fail to plausibly allege substantial assistance.

Plaintiff also attempts to introduce exhibits that include text messages by Ms. Al Saud to a nonparty in this action. *See* ECF No. 164-6. Because these exhibits fall outside of the pleadings, the Court does not consider them. *See Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) ("When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.") (cleaned up); *Ahmad v. Day*, 647 F. Supp. 3d 272, 282 (S.D.N.Y. 2022) (citing *Kiarie v. Dumbstruck*, Inc., 473 F. Supp. 3d 350, 355–56 (S.D.N.Y. 2020)) ("[M]aterials outside the pleadings are not properly considered on a motion to amend."); *Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016) ("A complaint that alleges facts related to or gathered during a separate litigation does not open the door to consideration, on a motion to dismiss, of any and all documents filed in connection with that litigation.").

The Court thus finds that any proposed amendment would be futile because Plaintiff's Proposed Second Amended Complaint would still fail to survive a motion to dismiss.

**CONCLUSION**

For the foregoing reasons, Plaintiff's claim against Defendant Al Saud is dismissed with prejudice and leave to amend is denied with prejudice. By January 16, 2026, the remaining parties are directed to file a proposed Fourth Amended Case Management Plan. The Court further notes that the Answer filed by Defendant Belperron Jewelers included a counterclaim against Ms. Manus and crossclaims against Mr. Pincione and Cimabue Ltd. *See* ECF No. 159. To date, the parties have not answered or otherwise responded to these counterclaims and crossclaims. Ms. Manus, Mr. Pincione, and Cimabue Ltd. are thus directed to respond by January 16, 2026. The Clerk of Court is respectfully directed to terminate ECF Nos. 160 and 163.

Dated: January 5, 2026
      New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge

14