# CARTER REICH, PC
## 106 W. 32nd Street, Suite 123
## New York, New York 10001
## (917) 615-0978

**Carter A. Reich, Esq.**
*Admitted NY & NJ*
**creich@reich.legal**

June 19, 2026

*Via ECF*
Honorable Jessica G. L. Clarke
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**MEMO ENDORSED**

RE:    <u>**Manus v. Pincione, et al.**</u>
         **Case No. 23-cv-06149-JGLC**

Dear Judge Clarke,

This office represents the Plaintiff. I am submitting this joint letter with counsel for Defendant Belperron Jewelers, in according with Rule 4(k) of your individual practices, to bring a discovery dispute to the Court's attention.  Specifically, the issue is whether Defendant Belperron should be required to disclose what became of Plaintiff's Ring so that it can be located and recovered.   The parties first met and conferred on this issue on May 29, 2026, but to date Belperron is unwilling to disclose this information.

**Belperron's Position**

Belperron respectfully submits that the disclosure sought by Plaintiff, namely the identity of the person or entity to whom Belperron resold the Ring, for the reasons set forth herein constitutes confidential and legally protected client information, is legally unfounded, factually incompatible with the undisputed record, and would inflict severe and irreparable financial and reputational harm upon Belperron's business. The evidence—comprised almost entirely of Plaintiff's own sworn statements and written admissions—establishes that in 2017 or 2018, Plaintiff voluntarily entrusted the Ring to Max Pincione and his company, Cimabue Ltd., both of whom were long established jewelry merchants. Plaintiff did not merely entrust the Ring to these merchants; she expressly authorized them to market and sell the Ring on her behalf and allowed the Ring to remain in their exclusive possession and control for a period of many years, until it was sold to Belperron in July 2024. Plaintiff did not commence litigation seeking recovery of the Ring until October 18, 2022—more than two and a half years after she claims to have demanded its return from the Pincione defendants in March 2020.

New York law is clear. Under UCC § 2403(2), any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in the ordinary course of business. New York courts have repeatedly applied this rule to

**CARTER REICH, PC**

protect innocent purchasers who acquire goods from merchants entrusted with possession. Porter v. Wertz, 53 N.Y.2d 696 (1981); Shapiro v. Greenfield, 40 A.D.3d 293 (1st Dep't 2007). Under the UCC, a good faith purchaser for value from a person who was entrusted with goods, may be found to be the owner of the goods in question, even if the entrustee violated his agency agreement with the original owner. Lloyds Underwriters v Ross, 2005 U.S. Dist. Ct., 60 U.C.C. Rep Serv 2d 558, SDNY 04-cv-4381.

Plaintiff's own admissions place this case squarely within § 2403. She not only entrusted the Ring to Pincione and Cimabue, but she did so for the express purpose, and with full authority, to sell the Ring on her behalf. Even if she had not expressly authorized a sale, her entrustment of the Ring to merchants dealing in goods of the kind vested them with the legal authority to transfer her rights to a buyer in the ordinary course.

Belperron was such a buyer. It purchased the Ring in July 2024 from the defendant, Cimabue Ltd. for $546,000 in a standard commercial transaction, in good faith, for value, and without notice—actual or constructive—of any adverse claim. Plaintiff's attempt to compel disclosure of Belperron's confidential client information is therefore irrelevant to any viable claim against Belperron and contrary to the protections afforded to good faith purchasers under the UCC.

The factual record is not in dispute. Plaintiff has repeatedly admitted that she placed her jewelry, including the Ring, into Pincione's private vault in 2017–2018 when she moved to Florida, and that she did so because she trusted him after a decades long personal and professional relationship. She even traveled with Pincione on a trip to Saudi Arabia. She further admitted, including in Interrogatory Responses, that in 2019 she asked Pincione to find a buyer for the Ring and Necklace and believed he was actively negotiating a sale on her behalf. In her April 30, 2020, email to Sotheby's, Plaintiff forwarded a Sotheby's consignment agreement that Pincione had sent her "in an attempt to help [her] sell [her] jewelry at auction." Her former counsel reiterated this to the Court on September 14, 2023, stating that Plaintiff "tendered [the jewelry] to Mr. Pincione to sell them." These admissions foreclose any argument that Plaintiff did not entrust the Ring to merchants for the purpose of sale.

The record also establishes—again without contradiction—that both Pincione and Cimabue Ltd. were merchants dealing in high value jewelry. Plaintiff described Pincione as a longtime Harry Winston executive who later opened his own jewelry office; she acknowledged that his office door listed multiple jewelry related companies, including Cimabue Ltd.; and numerous Harry Winston appraisals in the record bear Pincione's signature. Under UCC § 2104, there is no question that Pincione and Cimabue were merchants "who deal in goods of the kind." Under UCC § 2403(2), entrusting goods to such a merchant gives that merchant the power to transfer the entruster's rights to a buyer in the ordinary course. That is precisely what occurred here.

Belperron's acquisition of the Ring was a textbook ordinary course of business commercial transaction. Belperron is an internationally recognized fine jewelry house whose business depends on strict confidentiality, integrity, and adherence to longstanding industry customs. In July 2024, Belperron was approached by a representative of the owner—later revealed to be Cimabue Ltd.— seeking to sell the Ring. Belperron arranged for several carefully selected and well qualified clients

**CARTER REICH, PC**

to examine the Ring privately at its office, after which Belperron received multiple offers. Based on the highest offer, Belperron offered to purchase the Ring for $546,000—an extraordinarily fair and reasonable wholesale price, as the evidence will show. The transaction was documented in a written Offer Acceptance Letter signed by Pincione on behalf of Cimabue, in which Cimabue expressly represented and warranted that it was the sole lawful owner of the Ring and that the Ring was free of all claims or encumbrances. Belperron wired the full purchase price directly to Cimabue's bank account. Belperron did not learn of Plaintiff's dispute until receiving a letter from Plaintiff's counsel in December 2024—nearly five months after the purchase. Significantly, Pincione and Cimabue are well known throughout the New York wholesale gem and jewelry industry, in large part due to Pincione's prior employment for many years as a high- level executive with the Harry Winston Jewelers in New York.

Against this backdrop, Plaintiff's demand that Belperron disclose the identity of its subsequent purchaser is not only irrelevant but fundamentally incompatible with the UCC's protection of goodfaith buyers. Plaintiff's theory presupposes that Belperron is a wrongdoer whose sale must be unwound, yet the UCC expressly protects buyers in the ordinary course from precisely this type of claim. Plaintiff's attempt to compel disclosure of confidential client information is therefore an effort to circumvent the UCC by manufacturing a basis to pursue a party who, as a matter of law, cannot be liable.

The harm that such disclosure would inflict on Belperron is concrete and severe. Belperron's clients include highnetworth individuals, collectors, and members of royal families who rely on Belperron's absolute confidentiality. Revealing the identity of a purchaser—particularly in connection with a disputed item—would irreparably damage Belperron's reputation, undermine its business, and jeopardize longstanding client relationships. Courts routinely protect such information, and Plaintiff has identified no legal basis to override these interests. Plaintiff's stated purpose—to identify and sue the downstream purchaser—only underscores the impropriety of the request.

Finally, pursuant to the Court's requirement that each party submit its final proposed compromise position, Belperron notes that Plaintiff has offered none. Belperron, however, submits the following. Upon inquiry, Belperron has determined that shortly after its July 2024 purchase from Cimabue, the Ring was resold to a buyer located outside the United States. The Ring is therefore no longer within the territorial jurisdiction of this Court, and Belperron has no present ability—legal or practical—to recover possession of the Ring or place it into safekeeping. Although Belperron cannot retrieve the Ring, it assures the Court that it is a long established, reputable, and financially secure international jewelry house fully capable of satisfying any monetary judgment that might ultimately be entered against it. Thus, in the unlikely event that Plaintiff should prevail against Belperron on the merits, there is no risk that Plaintiff will be left without a remedy. For these reasons, compromise of this dispute is not feasible, and Plaintiff's request for disclosure of confidential client information remains legally unwarranted and incapable of advancing any meaningful relief.

Additionally, Belperron advises the Court that it is finalizing a Motion for Summary

**CARTER REICH, PC**

Judgment, which will be filed within the next seven to ten days. Belperron therefore respectfully requests that the Court defer ruling on this discovery dispute until after determination of Belperron's Summary Judgment motion.

**Plaintiff's Position**

This Court has already determined that Pincione did not have the right to sell Plaintiff's Ring and was under a Court Order to maintain the Ring pending the outcome of this litigation. In Your Honor's January 5, 2026, Opinion and Order, the Court recognized that "[c]onsequently, Plaintiff amended her complaint in pursuit of the Ring… [adding as defendants] any yet-unknown current possessor of the Ring… Plaintiff also added the Ring as a defendant *in rem*." Doc. No. 172, p. 1.   Plaintiff was permitted to amend her complaint and at no time has the Court stated that Plaintiff would not be able to continue to pursue her Ring.

Defendant Belperron sold the Ring – not in the ordinary course of business but as a result of a fraudulent scheme that they also allege - and has refused to disclose to whom, where it now is, or for how much it was sold. Defendant's stated grounds are that (i) the information constitutes "trade secrets" and its disclosure would cause reputational harm and is therefore unduly burdensome, and (ii) Defendant expects to prevail on summary judgment (prior to engaging in discovery) and therefore need not respond. Neither ground justifies withholding this information

The information sought is core discovery, not peripheral. Rule 26(b)(1) permits discovery of any nonprivileged matter relevant to a party's claims, and the Supreme Court has long recognized that ascertaining the identity of persons with knowledge of relevant facts is among the most basic purposes of discovery. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Here the purchaser is not merely a witness: they are the current possessor of the Ring, a necessary party to complete relief, and the subject of a demand-and-refusal that New York law requires Plaintiff to make. See *Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 317-18 (1991). Plaintiff cannot recover her Ring from an unidentified person at an unknown location. The Second Circuit has affirmed compelled disclosure of the identities of prospective defendants over far weightier objections than Defendant's. In *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010), even an asserted First Amendment interest in anonymity yielded to a plaintiff's concrete showing of a prima facie claim, and in *Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997), the court confirmed a plaintiff's entitlement to discovery to identify an unknown defendant.

This is consistent with New York law. In *Matter of Alexander v. Spanierman Gallery, LLC*, 33 AD3d 411 (1st Dept 2006), the First Department held that the owner of a stolen sculpture was entitled — before even commencing suit — to disclosure from the gallery of the identity of the purchaser, who was "a potential defendant in a prospective action . . . to, inter alia, replevy the artwork," and the Court went further, striking the lower court's direction that the purchaser's identity be kept confidential. If New York compels an art gallery to identify its buyer pre-action and without a confidentiality restriction, Defendant cannot withhold the same information from a plaintiff in a pending federal action.

The sale price is equally fundamental: it is an input to Plaintiff's damages computation — a category subject to initial disclosure under Rule 26(a)(1)(A)(iii) — and bears directly on the bona

**CARTER REICH, PC**

fides and commercial reasonableness of Defendant's sale. Indeed, Local Civil Rule 33.3(a) designates the names of persons with knowledge and the computation of damages as the presumptively appropriate subjects of first-round interrogatories in this District. Defendant is withholding precisely the discovery this District's rules treat as the starting point of every case.

Defendant's confidence in its defenses is not a basis to withhold discovery. A party served with discovery must respond or obtain a protective order; it may not unilaterally excuse itself based on its own forecast of the merits. Even a fully briefed dispositive motion does not stay discovery absent a court order upon a showing of good cause. Defendant has filed no such motion and should not be permitted to do so just as a stall tactic and to avoid discovery. Belperron's affirmative defenses are unadjudicated, remain its burden to prove, and are themselves proper subjects of the very discovery Defendant resists. Rule 26(b)(1) extends to matter relevant to "any party's claim or defense"; nothing in the Rules conditions a plaintiff's discovery on the prior defeat of the defendant's defenses.

Defendant's "Trade secret" and "reputational harm" objections are similarly unconvincing. There is no trade-secret privilege in federal court; even genuine confidential commercial information is produced subject to protective conditions, not withheld. *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 (1979); Fed. R. Civ. P. 26(c)(1)(G). The party resisting discovery bears the burden of demonstrating good cause through "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements," *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987), by showing a "clearly defined, specific and serious injury," *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (SDNY 2010). Defendant has offered no affidavit or particularized facts — only counsel's assertions. Nor could it: the identity of a single counterparty to a single completed sale, and one price, is a historical fact about the dispute, not a customer list or compilation used continuously in Defendant's business and deriving independent value from secrecy. Furthermore, generalized "embarrassment" — particularly business embarrassment at being sued over a stolen ring — is not an injury Rule 26(c) protects. *Duling*, supra., 266 F.R.D. at 71-72; cf. Alexander, 33 AD3d at 411 (deleting confidentiality restriction on stolen-property purchaser's identity). To eliminate any colorable concern, Plaintiff offered during the meet-and-confer to enter a stipulated confidentiality order designating the information for litigation use only.

Plaintiff respectfully requests that the Court direct Defendant to disclose this information within seven (7) days and grant such other relief as the Court deems just, including fees under Rule 37(a)(5) should motion practice prove necessary.

Thank you for your attention to this matter.

Respectfully submitted,

s/ Carter A. Reich
s/ Ben Kinzler

cc:      All counsel (via ECF)

Case 1:23-cv-06149-JGLC    Document 192    Filed 06/26/26    Page 6 of 6

Defendant is HEREBY ORDERED to disclose the purchaser of the Ring by **July 6, 2026**. The Court agrees with Plaintiff's position that the purchaser's identity is, at a minimum, relevant and proportional to Plaintiff's claims within the meaning of Rule 26(b)(1) of the Federal Rules of Civil Procedure. Moreover, Belperron does not assert that the purchaser's identity is privileged as a matter of law, nor does Belperron provide any case law to support its assertion that "[c]ourts routinely protect such information." *See supra* at 3. Accordingly, the Court does not find Belperron's arguments about the merits of its defenses persuasive or determinative in this discovery dispute. To the extent Belperron's letter may be deemed an application for a protective order, it is denied becuase it does not show "good cause" in the form of a "clearly defined, specific and serious injury." Fed. R. Civ. P. 26(c)(1); *In re Sept. 11 Litig.*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009) (citation omitted).

The Clerk of Court is directed to terminate ECF No. 190.

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge

Dated: June 26, 2026
        White Plains, New York